STATE OF CONNECTICUT *v.* RICHARD WEBER
(11502)

DUPONT, C. J., DALY and FOTI, Js.

Argued February 8—decision released April 20, 1993

*Thomas Ullmann,* public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Turcotte,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (3), as a lesser included offense of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that the trial court improperly (1) ruled that certain evidence was inadmissible, and (2) failed to instruct as he requested on the defense of property. We affirm the trial court's judgment.

The jury reasonably could have found the following facts. On March 17, 1988, David Mason, a tow truck operator employed by Towne Auto in New Haven, was working with a coworker, Paul Goulet, towing illegally parked vehicles. The company had ten accounts to tow vehicles that were improperly parked blocking garage doors. Sometime after 11 p.m., Mason drove his tow

truck into the rear parking lot at 90-98 Norton Street, one of Towne Auto's accounts. He had been called three times about a black van owned by the defendant that was parked in a no parking area. As Mason pulled into the driveway, he saw a black van parked on the left side of the driveway, blocking three garage doors. There was a no parking sign on each of the garages and a similar sign on the opposite side of the driveway. With the help of Goulet, who was there with his own tow truck, Mason hooked the van onto his tow truck. The van was suspended from the tow truck when the defendant appeared, wearing only boxer shorts. When asked by the defendant what he was doing, Mason replied that he was towing the van because it was blocking three garage doors. The defendant then shouted, "You ain't taking the fucking truck out of here" and went back inside the building.

Because it was difficult to turn the truck in the narrow driveway, Mason had to get out of the cab of his vehicle and walk around the wrecker to check the area. While out of the vehicle, Mason saw the defendant exit the building holding a rifle or shotgun, which he pointed at Mason while shouting profanities. Mason grabbed the weapon and threw it towards Goulet; then Mason and the defendant got into a fistfight, which resulted in both going to the ground. The fight broke up after several minutes, and Mason climbed back into his truck and the defendant went back inside the building. After driving the truck forward a few more feet, Mason again found it necessary to exit the cab to determine if he had clearance. The defendant appeared a third time and said, "You, you driving the truck." As Mason turned, the defendant, who was holding a handgun, fired a shot, hitting Mason on the left side of his chest. The defendant then ran back into the building. Mason fell to the ground and yelled to Goulet for help. Mason could not get up and Goulet put him inside his tow truck. Police

officers and an ambulance arrived shortly thereafter. As a result of the gunshot wound, Mason's spinal cord was injured, leaving him paraplegic.

After the shooting, the defendant discarded the pistol, a .38 caliber for which he did not have a permit, into a nearby body of water. The defendant turned himself in to the police five days later.

I

The defendant first claims that the trial court improperly excluded evidence of Mason's violent character, which he offered on the issue of initial aggressor[1] in connection with his claim of self-defense.[2] Specifically, the defendant argues that the trial court should have admitted evidence of Mason's criminal convictions and the nature of those underlying convictions to show Mason's violent disposition. The defendant further argues that he should have been allowed to cross-

---

[1] The defendant attempted to show that Mason had been the initial aggressor in the incident. He claimed that he told Mason that the rifle (or shotgun) was not loaded, but that Mason, who the defendant alleged was intoxicated at the time, came at him with a lockblade folding knife. The defendant claimed that Mason poked and slashed at him with the knife as the two fought. The defendant claimed that he then retreated to his apartment and returned with his handgun; as Mason approached him, he pulled the weapon from his jacket pocket and fired one shot toward Mason. The defendant claimed that he was not sure whether Mason had the knife as he approached.

[2] General Statutes § 53a-19 provides in pertinent part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor . . . ."

examine Mason as to specific acts of violence that did not result in conviction, also to show Mason's propensity for violence. We conclude that the trial court properly excluded this evidence.

Before the introduction of evidence, both the defendant and the state filed motions addressing the issue of the victim's propensity for violence and the issue of initial aggressor in a self-defense case. The defendant filed a motion for supplemental discovery, seeking information about Mason's convictions, arrests and misconduct history involving acts of violence or use of a weapon. The state filed a motion in limine, seeking to exclude any evidence attempting to show Mason's violent character as a means of establishing that he was the initial aggressor. The trial court ruled that while evidence of a victim's propensity for violence is admissible in an assault case when self-defense has been raised, the defendant had not raised such a claim. The court therefore denied the defendant's motion and granted the state's motion in limine.

Following the defendant's presentation of witnesses after the state's case-in-chief, the defendant made an offer of proof as to ten separate incidents to determine whether any of Mason's convictions or acts of misconduct involving violence would be admissible on the issue of initial aggressor.[3] The ten incidents, in chronological order, and the court's ruling on each are as follows:

(1) July, 1978 breach of peace conviction, stemming from Mason's verbal abuse of and threat of physical harm to a neighbor. The court ruled that the incident, having occurred almost ten years earlier, was too remote in time and involved an incident that was not

---

[3] The court had earlier ruled that the defendant could introduce evidence of Mason's conviction of three felonies and the dates of conviction without referring to the names of the offenses, as part of Mason's prior criminal record, for impeachment purposes.

sufficiently similar in nature to the factual allegations in the present case. While the court agreed with the defendant that an incident does not have to present an identical fact pattern to be admissible, the court ruled that this conviction lacked sufficient probative value to be admissible.

(2) December, 1978 conviction for carrying a dangerous weapon, involving an incident in which Mason used a gun during a dispute. The court ruled that evidence of the arrest lacked sufficient probative value, because it arose out of a domestic dispute that occurred more than nine years before the present incident. The court also disallowed the evidence because it would divert the jury from the issues in the case, unduly delay the case, and bring in collateral matters. The court rejected the defendant's claim that introducing this evidence would not violate the concerns set forth in *State* v. *Miranda*, 176 Conn. 107, 109–10, 405 A.2d 622 (1978).

(3) May, 1979 conviction for breach of peace, involving a domestic dispute in which Mason drove his vehicle over another person's lawn. The court refused to admit this evidence because the incident was too remote, having occurred almost nine years before the incident at issue, and because the nature of the violence was not sufficiently similar to the violence in this case. There also appeared to be a question as to how the altercation began, specifically, whether the witness or the complainant was the instigator. The court noted that while the defendant was attempting to demonstrate that Mason "is not a very nice man . . . that is not the issue."

(4) July, 1979 disorderly conduct conviction, for which the court described the charge as involving Mason's trying to "beat some gas station out of $5 worth of gas and he yelled a few obscenities . . . as he tried to drive away." Here, again, the court noted

that the incident might demonstrate that Mason was a "real wise guy" but that this was not sufficient to demonstrate Mason's violent character. The court also pointed out that the incident had occurred almost nine years earlier and was not sufficiently similar to have any probative value.

(5) October, 1980 felony conviction for reckless burning, involving Mason's burning of an automobile during a domestic dispute with his wife. While the defendant was permitted to use this felony conviction for impeachment purposes, the court would not permit the defendant to inquire into the underlying facts to demonstrate Mason's propensity for violence. The court ruled that the conviction was too remote and that the nature of the violence was unlike that in the present case, thereby depriving the evidence of sufficient probative value.

(6) and (7) Two January, 1982 convictions for conspiracy to commit arson, involving Mason's hiring someone to burn four vehicles and his torching the house of a person who Mason claimed owed him money. While the defendant had been permitted to use these prior convictions for impeachment purposes, the court again noted that unless there was some similarity between the facts of these convictions and those of the alleged aggression in the case before the jury, they could not be admitted. The court observed that neither incident bore this similarity. With respect to the first conviction, the court expressed concern that the evidence would confuse the jury. The state argued that the nature of the first incident was really fraud, that Mason was attempting to get insurance proceeds by having his wife's car destroyed, that the conviction was remote in time (over six years ago) and that the element of violence was completely different from that in the present incident. The court agreed and disallowed the evidence.

With respect to the second conviction, the defendant pointed out that Mason was involved in setting fire to a porch. The court noted, however, that to be admissible there had to be some assaultive behavior on another person sufficiently similar to that in the present case. The court considered the nature of the crime and its remoteness in time and found that the evidence lacked sufficient probative value to warrant admission. The court further noted its concern with confusing the jury and diverting the jury from the issues in this case.

(8) February, 1986 breach of peace conviction, involving Mason's throwing snowballs at the driver of another car. The court found that this was not sufficiently probative on the trait of violence.

(9) and (10) Two incidents, one in April, 1989, and one in December, 1989, involving acts not resulting in conviction. The court ruled that evidence of these incidents was inadmissible because propensity for violence may not be proved by specific acts of misconduct unless those acts result in conviction.

"The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990). The determination of remoteness, like relevancy, is left to the trial court's sound discretion. *State* v. *Payne,* 219 Conn. 93, 112, 591 A.2d 1246 (1991); *State* v. *Maldonado,* 193 Conn. 350, 365, 478 A.2d 581 (1984). "The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Willis,* 221 Conn. 518, 522, 605 A.2d 1359 (1992).

The defendant acknowledges that he has assumed a heavy burden in seeking to reverse the exercise of judicial discretion. With respect to his attempt to introduce the underlying facts of each conviction to demonstrate Mason's propensity for violence, he relies heavily on *State* v. *Miranda*, supra. We have recently stated, however, that "[n]othing in that holding of the Supreme Court permits the view that this allows an exploration of the factual predicate for the convictions. While the victim's violent character may be established by proof of his convictions of crimes of violence; [*State* v. *Miranda*, supra, 114]; it may not be proven by evidence of other specific acts. *State* v. *Webley,* 17 Conn. App. 200, 206, 551 A.2d 428 (1988)." *State* v. *Maxwell,* 29 Conn. App. 704, 713–14, 618 A.2d 43 (1992).

While specific convictions for violent acts may be admissible, a defendant may not "introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case, the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." *State* v. *Miranda,* supra.

Our review of the record convinces us that the trial court properly excluded evidence of Mason's prior convictions that were remote in time and dissimilar in nature to the alleged aggression in this case. The court also properly excluded as irrelevant Mason's misdemeanor convictions that were not sufficiently probative of a violent trait. While the defendant was permitted to use evidence of three unnamed felony convictions to impeach Mason, the court, in a reasonable exercise of discretion, prohibited the defendant from inquiring into the underlying facts of these convictions. The court properly determined that the convictions

were too remote and not sufficiently probative of violence because they were not similar to the incident in this case.

The defendant argues that he should have been allowed to introduce evidence concerning details of the two incidents that did not result in Mason's conviction as specific acts of misconduct tending to show Mason's propensity for violence. Specific acts of violence, other than convictions, may not be introduced to show a victim's violent character because such evidence " 'has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial.' *State* v. *Miranda,* supra, 112 . . . ." *State* v. *Smith,* 222 Conn. 1, 18, 608 A.2d 63, cert. denied, U.S. , 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992).

The defendant contends that sound policy reasons exist for allowing cross-examination of a victim as to specific acts of violence to show the victim's propensity for aggression. We note that the alleged acts occurred the year after Mason had been paralyzed. Even if Mason's propensity for violence and aggression could be demonstrated by those acts, it is highly speculative whether Mason had always had those traits or had acquired them as a result of his permanent injuries caused by the defendant.

The defendant argues that the trial court's refusal to allow him to introduce Mason's prior crimes prevented him from establishing a proper defense. This evidence of Mason's violent nature was necessary, he claims, for the jury to determine whether he or Mason had been the initial aggressor. A victim's violent character can be proved in more than one way. It can be proved by reputation testimony, by opinion testimony, or by relevant evidence of his convictions for crimes of violence. *State* v. *Miranda,* supra, 114. We cannot conclude that the court abused its discretion in prohibit-

ing the defendant from admitting the proffered evidence or from cross-examining Mason regarding prior specific acts of violence not resulting in conviction.

## II

The defendant next claims that the trial court improperly failed to instruct the jury, as he requested, on the defense of property pursuant to General Statutes §§ 53a-21 and 53a-16.[4]

In reviewing a claim that the trial court failed to charge as requested, we adopt the version of the facts most favorable to the defendant that the evidence would reasonably support. *State* v. *Lewis,* 220 Conn. 602, 619, 600 A.2d 1330 (1991). A request to charge that is relevant to the issues of the case and that is an accurate statement of the law must be given. *State* v. *Nesmith,* 220 Conn. 628, 632, 600 A.2d 780 (1991). Moreover, a defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible. *State* v. *Havican,* 213 Conn. 593, 597, 569 A.2d 1089 (1990).

Justification under General Statutes § 53a-16 is a defense permitting the use of physical force in defense of property, as described in General Statutes § 53a-21. Section 53a-21 provides that under certain circum-

---

[4] General Statutes § 53a-21 provides: "A person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny or criminal mischief involving property, or when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force; but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19."

General Statutes § 53a-16 provides: "In any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense."

stances, physical force may be used to prevent an attempted larceny involving property or to regain property that was acquired by larceny. That section also provides, however, that a person "may use *deadly* physical force under such circumstances *only* in defense of person as prescribed in section 53a-19." (Emphasis added.) The facts clearly did not permit the defendant reasonably to believe that Mason was engaged in an attempted larceny of the defendant's van. Even if such an argument could be made, the defendant was not, under § 53a-21, permitted to use "deadly physical force."

The lack of justification is an element of a criminal prosecution on which the state bears the burden of proof. *State* v. *Preyer,* 198 Conn. 190, 199, 502 A.2d 858 (1985). Before a self-defense instruction is warranted, however, "[a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case." *State* v. *Bailey,* 209 Conn. 322, 335, 551 A.2d 1206 (1988).

"The justification defense allowed under General Statutes § 53a-21 is expressly limited to the use of *reasonable* physical force in the defense of property. By its limiting proviso, excluded from the defendant's request to charge, one may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19. Under General Statutes § 53a-3 (5), [d]eadly physical force means physical force which can be reasonably expected to cause death or serious physical injury." (Emphasis in original; internal quotation marks omitted.) *State* v. *Woolfolk,* 8 Conn. App. 667, 672A, 517 A.2d 252 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1207 (1987). Section 53a-21 thus precludes the use of deadly physical force in the defense or retrieval of personal property.

The defendant argues that because Mason was taking the defendant's van, the jury was entitled to know that the defendant was entitled to use reasonable force to prevent the theft of the van. He further argues that the fact that "Weber's use of reasonable physical force in protecting his property escalated to an attack on his person at knife-point by Mason is anticipated by the defense of property statute's reference to the defense of person provision should deadly force come into play." The defendant contends that he presented substantial evidence justifying the defendant's use of reasonable physical force in protecting his van.[5] We disagree.

Mason was driving a tow truck; his coworker Goulet was driving another tow truck. Mason's vehicle had the name and telephone number of Towne Auto on it. Mason wore a jacket clearly showing the company's insignia. The defendant went back inside his apartment twice before coming out with a handgun. At no time did the defendant call the police. Mason clearly told him that the van was being towed because it blocked three bays. Under all of the circumstances, the defendant could not reasonably have believed that Mason was engaging in a larceny or an unlawful trespass by towing the van.

---

[5] The defendant recited the following facts in support of his request for jury instructions on defense of property: "The defendant, by his testimony, has raised the defense of justification by the defense of property. Mr. Weber testified that he owned the 1978 Chevy van that was about to be towed by Mr. Mason and Mr. Goulet. In addition he testified that items of personal property such as his tools, a miniature T.V. and a radio cassette deck were located inside the van. Mr. Weber thought that Mr. Mason and/or Mr. Goulet were trying to steal certain of his possessions and these accusations were even heard by witness Maureen O'Brien. A couple of minutes prior to the shooting, Mr. Weber testified to being stabbed and slashed at knifepoint by Mr. Mason. At the time Mr. Weber pulled the revolver out of his pocket, he testified that Mr. Mason was coming toward him and that he believed that Mr. Mason was coming toward him and that he believed that Mr. Mason was about to use deadly physical force and/or about to inflict great bodily harm."

The trial court charged extensively on self-defense.[6] The defendant's theory of defense was that he was defending himself, not the van, when he used the

[6] The court instructed as follows: "Now the law of self defense is as follows: Mr. Weber was justified in using reasonable physical force upon Mr. Mason to defend himself from what he reasonably believed to be the eminent use of physical force, and he was entitled to use such degree of force which he reasonably believed to be necessary for that purpose. Except that Mr. Weber was not permitted to use deadly physical force unless he reasonably believed that Mr. Mason was, one, using or about to use deadly physical force; or two, inflicting or about to inflict great bodily harm.

"Notwithstanding that, Mr. Weber would not have been justified in using physical force if you are convinced that the state has proved beyond a reasonable doubt that, one, with intent to cause serious physical injury to Mr. Mason, Mr. Weber provoked the use of physical force upon him.

"Or two, Mr. Weber was the initial aggressor except that his use of physical force on Mr. Mason was justifiable if he withdrew from the encounter and effectively communicated to Mr. Mason his intent to do so. Nevertheless, Mr. Mason continued or threatened the use of physical force.

"Further, Mr. Weber would not have been justified in using deadly physical force if you are convinced that the state proved beyond a reasonable doubt that Mr. Weber knew he could have avoided the necessity of using force with complete safety by retreating.

"Deadly physical force is defined as physical force which can be reasonably expected to cause death or serious physical injury. The reasonableness of the force used by Mr. Mason in this case, I am sorry, used by Mr. Weber in this case must be judged objectively in light of all the circumstances which were existing at the rear of 90-98 Norton Street just about 11:30 p.m. on the date in question, and judged subjectively in light of Mr. Weber's belief at that time.

"You should bear in mind that a person is not entitled to use greater force than is necessary to withhold the attack against him. However, when you evaluate Mr. Weber's conduct you should bear in mind the situation in which he found himself. A person who reasonably believes that he is fighting for his life may properly use more force than would appear necessary to a detached observer of the event.

"A reasonable belief does not mean that Mr. Weber must be without fault. His belief could have been mistaken or inaccurate yet reasonable given the fast happening circumstances and the need to make a decision and react. The key word is reasonable.

"First of all, the defendant must have a reasonable belief that he is faced with the imminent use of physical force upon him. A reasonable belief is one which a reasonable prudent person in the same circumstances would

## revolver. The court did not improperly refuse to give an instruction on defense of property.[7]

have. It is not an irrational belief, nor is it a belief which is not justified by all the circumstances existing then and there.

"You must view the situation from the perspective of the defendant. However, you must determine whether the defendant's belief ultimately was reasonable.

"Secondly, acting with the reasonable belief, the amount and degree of force which he uses must be reasonable. It must be that degree of force which a reasonable person in the same circumstances would use and no more. If the degree of force used is excessive or unreasonable in view of all the circumstances, the defendant is not entitled to the defense of self defense.

"Finally, a person is not justified in using physical force if intending to cause physical injury to the other person he provokes the use of physical force by that other person or if he is the initial aggressor. That is, the first one to use physical force. Whether the defendant's belief was reasonable, whether the degree of force he used was reasonable, and whether he provoked the use of force or was the aggressor are questions of fact for you to determine from the evidence.

"As I mentioned earlier, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating. The law stresses that the defensive measures must never be retaliatory. The force must be a defensive force not a reprisal or a punishment force. The law says that if it is feasible or possible, the person attacked should retreat and get away from there before standing his ground and returning force with force.

"And the conclusion on the matter of self defense, you must consider whether the defendant took the proper defensive measure to protect himself. Did he retreat? Did he take retaliatory measures or some stronger measures not responsible in light of the attack."

[7] The defendant took an exception as follows:

"Mr. Ullmann: My final exception is to failure to instruct on the defense of property, the defense of premises, only in regard to the fact that when Your Honor instructed pursuant to my request about the reasonable force to be used, and again you [were] talking about reasonable, the jury does not have an understanding that Mr. Weber could have reacted with reasonable physical force in regard to those other things such as the defense of premises and the defense of property, not just physical injury. And that's why I think that those two items to be presented to the jury were important. In other words, Your Honor gave them one reason.

"The Court: Mr. Ullmann, the ultimate question on a self-defense claim is: Was he justified in shooting Mr. Mason?

"Mr. Ullmann: I understand.

"The Court: That's what we are talking about. He would not have been justified in shooting if he was defending his premises other than perhaps his home. I am not sure about that. But defense of premises or defense

The judgment is affirmed.

In this opinion the other judges concurred.

of property from someone who is taking his property, let's assume there is evidence that there was some clue Mr. Mason was stealing his van, he would not be justified in taking out a gun and shooting him. What's the purpose of getting into defense of property or premises?

"Mr. Ullmann: Because the second altercation if Mr. Weber is justified in using physical force there, that circumstance is used to view his justification later on. And the jury under this instruction only believes that he is entitled to use reasonable physical force if he was in fear of some physical injury himself."