## STATE OF CONNECTICUT *v.* MICHAEL MITCHELL
### (AC 19708)

Lavery, C. J., and Spear and Hennessy, Js.

Argued May 1—officially released August 22, 2000

*Conrad Ost Seifert*, special public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *John Waddock*, senior assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Michael Mitchell, appeals from the judgment of conviction, rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (1) and 53a-70 (a) (1), and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). The defendant's claim on appeal arises from the trial court's instruction to the jury that it could infer from the defendant's failure to produce certain witnesses that evidence from those witnesses would have been unfavorable to the defendant.[1] The defendant claims that the court's jury instruction was improper and that it constituted harmful error.

The jury reasonably could have found the following facts. On February 6, 1996, the defendant entered the victim's boutique in New Haven. He showed the victim his wedding band and told her that he was looking for a Valentine's Day gift for his wife. Several customers entered and left the store while the victim showed the defendant some pieces of jewelry. When the store was empty, the defendant grabbed the victim's arm and told her that he was there to rob her. Noticing a pointed object protruding from the defendant's jacket pocket, the victim gave him money from a desk drawer. The defendant then pushed her into the dressing room

---

[1] In *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–75, 165 A.2d 598 (1960), our Supreme Court held that the failure to produce a witness for trial who is available and whom a party would naturally be expected to call, warrants an adverse inference against that party. This is commonly referred to as the "missing witness rule" or the *Secondino* rule.

where he sexually assaulted her. He stopped after the victim had convinced him that she had HIV. He then went behind the desk, threw her purse at her and ordered her to dump everything out. He rifled through its contents and took money from another purse containing business proceeds. He then wiped the counters and the desk with a scarf from the store and, after the victim pleaded for her life, he left. The victim immediately called the police and later identified the defendant as the perpetrator.

At trial, the defendant presented an alibi defense. Specifically, his girlfriend testified that she picked up the defendant at his grandmother's home on February 2, 1996. She further testified that the defendant stayed with her at her apartment in Bridgeport from February 2 to February 7, when she returned him to his grandmother's home. She also testified that she shared the apartment with her niece and her niece's boyfriend; however, the grandmother, the niece and the niece's boyfriend were not presented as defense witnesses. At the state's request, the court instructed the jury that the defendant's failure to present those witnesses may be used to draw the inference that the witnesses would have provided evidence unfavorable to the defendant. The defendant took an exception to the instruction and subsequently appealed from his conviction.

The defendant claims that the court improperly instructed the jury pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960). The defendant initially bases his claim on the vitality of the "missing witness rule" as set forth in *Secondino*. After the defendant filed his brief in this appeal, our Supreme Court abandoned the *Secondino* rule in criminal cases in *State* v. *Malave*, 250 Conn. 722, 739, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), holding that "the continued use of the *Secondino* instruction is unwar-

ranted." Id., 728. The issues remain, however, as to whether *Malave* applies retroactively in this case and, if so, whether the jury instruction constituted harmful error.

In *State* v. *Young*, 57 Conn. App. 566, 572, 750 A.2d 482 (2000), this court reiterated that *Malave* applies retroactively. As did the defendant in this case, the defendant in *Young* appealed from his conviction on the ground that the court improperly gave the jury a missing witness instruction. During the pendency of that appeal, however, our Supreme Court decided *Malave*. As we noted in *Young*, "[t]he *Malave* decision applies retroactively to this case because so doing will not produce substantial inequitable results and because our Supreme Court did not stipulate that the *Malave* decision should apply prospectively only. See *Marone* v. *Waterbury*, 244 Conn. 1, 10, 707 A.2d 725 (1998) (judgments that are not by their terms limited to prospective application are presumed to apply retroactively) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, supra, 572, quoting *State* v. *Quinones*, 56 Conn. App. 529, 533, 745 A.2d 191 (2000). Because *Malave* applies retroactively, we now turn to the question of whether the *Secondino* instruction harmed the defendant. *State* v. *Malave*, supra, 250 Conn. 740–41; *State* v. *Young*, supra, 573.

"[T]he defendant has the appellate burden to establish harm flowing from the [instructional] error, in order to secure a reversal of the judgment." (Internal quotation marks omitted.) *State* v. *Malave*, supra, 250 Conn. 741. In *Malave*, our Supreme Court acknowledged two lines of cases that articulate the standard of review for harmless error. "One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . Another line of cases states that the defendant must establish that the trial court error caused

him substantial prejudice." (Citations omitted; internal quotation marks omitted.) Id.; see also *State* v. *Young*, supra, 57 Conn. App. 573. The court in *Malave* declined to resolve whether there was a functional difference between the two standards because it concluded that the defendant had failed to meet his burden under either standard in light of the "strong" evidence against him. *State* v. *Malave*, supra, 741. In that case, the victim knew the defendant, identified him to hospital personnel as the assailant shortly after the crime and selected his photograph from a photographic display. A second victim also identified the defendant at trial as the assailant.

As in *Malave*, we find that the defendant here failed to meet his burden of proof under either the "more probable than not" or the "substantial prejudice" standard. The state offered strong evidence that the defendant was the perpetrator. First, the victim had ample opportunity to view the defendant. Before the assault, the victim and the defendant had had a conversation and, during the assault, they remained in close proximity. Additionally, the entire exchange lasted approximately one hour in a well-lit store. The next day, the victim identified the defendant from a photographic array, stating that she was 99 percent sure of his identity, and, two days after the incident, she pointed him out on the street with 100 percent certainty. Her description of the defendant was further substantiated by evidence that the defendant wore a thin gold ring and had a cut on his nose. Furthermore, the jury reasonably could have rejected as unreliable the only alibi testimony offered, which was that of the defendant's girlfriend. Moreover, the court's instruction did not *require* the jury to draw an inference from the defendant's failure to produce certain witnesses; rather, it apprised the jury that it *could* draw such an inference if the *Secondino* requirements had been met. See id., 742.

We conclude that the identification evidence offered by the state in this case was so strong that it is reasonable to presume that the jury would have found the defendant guilty even if the court had not given the *Secondino* instruction.[2] Because the defendant has not established "that the jury's evaluation . . . would have been different had the court not given the *Secondino* instruction"; id., 743; we find that the defendant did not establish that the *Secondino* instruction constituted harmful error.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] Although this court found a contrary result with respect to the harmfulness of the error in *Young*, *Young* is distinguishable from the present case. In *Young*, although the witness also had been charged in connection with the incident involving the defendant and had been advised to invoke his privilege against self-incrimination, the trial court ruled that he was available and, if his testimony were favorable, he would naturally have been called as a defense witness. *State* v. *Young*, supra, 57 Conn. App. 571. In determining whether the *Secondino* instruction had harmed the defendant, this court noted that the prosecutor had repeatedly referred to the witness' absence in closing argument, and, because it was unlikely that the defendant could have obtained the witness' testimony, he "was powerless to contest the potential inference." Id., 575. Also, the victim's credibility "was critical to the state's case"; id., 573; and the fact that the defendant had been acquitted of some of the charges showed that her testimony was not totally accepted. Id., 575. We concluded that it was more probable that not that the "state of the evidence, coupled with the state's heavy reliance on the missing witness inference in its arguments to the jury . . . affected the result and caused the defendant substantial prejudice." Id. Here, although the state's case hinged on the reliability of the victim's identification, there was strong evidence supporting that identification.