STATE OF CONNECTICUT *v.* MICHAEL A. YOUNG
(AC 16090)

Foti, Mihalakos and Hennessy, Js.

Argued September 10—officially released November 12, 2002

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, was *Nina Rosen*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. This case is before us on remand from our Supreme Court. *State* v. *Young*, 258 Conn. 79, 101, 779 A.2d 112 (2001). The defendant, Michael A. Young, first appealed to this court from the judgment of conviction, rendered after a jury trial, of three counts of criminal violation of a protective order in violation of General Statutes (Rev. to 1995) § 53a-110b, one count each of breach of the peace in violation of General Statutes § 53a-181 (a) (2), disorderly conduct in violation of General Statutes § 53a-182 (a) (1), reckless endangerment in the second degree in violation of General Statutes § 53a-64 and criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A). In his first appeal, the defendant claimed that "the trial court improperly (1) instructed the jury that the defendant's failure to produce a certain witness permitted

the jury to infer that the witness' testimony would have been adverse to the defendant, (2) precluded evidence of the victim's prior misconduct, (3) admitted evidence of a telephone conversation without a proper evidentiary foundation, (4) precluded the defendant from impeaching the victim regarding an alleged act of fraud and (5) allowed the state to impeach the defendant's character with misconduct evidence." *State* v. *Young*, 57 Conn. App. 566, 568, 750 A.2d 482 (2000), rev'd in part, 258 Conn. 79, 779 A.2d 112 (2001). In that decision, this court addressed all of the defendant's claims except the claim concerning the prior misconduct evidence.[1] Our Supreme Court granted the state's petition for certification to appeal[2] and ultimately remanded the case to this court with direction to consider the unreviewed claim. Having considered that claim, we conclude that the trial court properly admitted the evidence of the defendant's prior misconduct. Accordingly, we affirm the judgment of the trial court.

The facts that the jury reasonably could have found are set forth in both *State* v. *Young*, supra, 258 Conn. 84–88, and *State* v. *Young*, supra, 57 Conn. App. 568–70. The following facts are necessary to resolve the defendant's remaining claim.

---

[1] This court remanded the case to the trial court after reversing one judgment on the ground of the improper missing witness instruction and affirming the judgments pertaining to the defendant's two other convictions for criminal violation of a protective order.

[2] The state sought certification to appeal on the issue of whether *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), should be applied retroactively. *State* v. *Young*, 253 Conn. 922, 754 A.2d 799 (2000). In *Malave*, our Supreme Court abandoned the missing witness instruction in criminal cases, also known as the *Secondino* instruction. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960). Our Supreme Court in *Young* did not reach the merits of the certified issue. It "nevertheless conclude[d] that the trial court abused its discretion in granting the state's motion for a *Secondino* charge and, consequently, [that] the charge should not have been given." *State* v. *Young*, supra, 258 Conn. 84.

Before the trial commenced, the defendant filed a motion in limine seeking to preclude the state from inquiring into his prior felony convictions. Regarding that motion, the court ruled to exclude the defendant's felony conviction for marijuana possession because it was more prejudicial than probative. At trial, the defendant testified in his defense about incidents that occurred on November 25 and 30, but invoked his privilege against self-incrimination regarding the charged offenses stemming from an August 4, 1995 incident. On cross-examination, the defendant offered unsolicited testimony that he had been wrongly arrested and harassed by the police. Thereafter, the state questioned the defendant about his prior acts of misconduct.[3] Defense

---

[3] The trial transcript reveals that the following relevant colloquy concerning the state's cross-examination of the defendant:

"[Prosecutor]: So, why did you feel that you would get arrested in this [November 25, 1995] incident? If you did nothing wrong, why did you feel you were going to get arrested?

"[The Defendant]: Because the police harass me.

"Q. Excuse me?

"A. The police harass me.

"Q. The police harass you?

"A. Yes.

"Q. Which police harass you?

"A. Troop C.

"Q. Troop C. All the police officers at Troop C harass you?

"A. Most of them.

"Q. And why do they do that?

"A. I don't know why.

"Q. Maybe because they don't do that, Mr. Young, maybe you just think they do. Could that be it?

"A. Well, they arrest me for things I don't do.

"Q. They arrest you for things you don't do?

"A. Yes.

"Q. In fact, you are totally innocent of everything and they go around arresting you. Is that what you are saying?

"A. Most of the time.

"Q. Most of the time? How many times have they arrested you for things that you haven't done, Mr. Young?"

At that point, defense counsel objected on the ground that prior arrests are not indicative of guilt. The court overruled the objection, finding that the defendant had opened the door to the question, and the court allowed

counsel objected to the line of questioning, arguing
that it was improper for the state to inquire into the
underlying facts of the defendant's prior arrests. The
court overruled the defendant's objection, finding that
the defendant had opened the door to the cross-exami-
nation regarding his prior arrests by mentioning them
in his response to the state's question about why he
had believed he would be arrested for the November,
1995 incident.

the prosecutor to continue.

"[Prosecutor]: How many times, Mr. Young, have they arrested you for
no reason whatsoever? Mr. Young? Are you counting?

"[The Defendant]: A lot.

"Q. And each and every one of those times, you did nothing wrong, is
that what you are saying?

"A. Two of the times I was sleeping in my house.

"Q. And they burst in and arrested you? Is that what you are saying?

"A. Once, I lived in a condemned building. I was told to stay there.

"Q. I'm sorry, once you lived in a condemned building?

"A. I lived in a condemned building. I lived in this building and they
condemned it, and then I was told by my attorney to stay there, not to move
out, and they arrested me there for living in a condemned building.

"Q. Okay.

"A. And then the time when Brandy said I hit her head against the wall.
I was sleeping when the police officer came in.

"Q. Okay, all the other times when you weren't in your house or sleeping,
all those other times, you were arrested for things that you didn't do, is
that right?

\* \* \*

"Q. About how many times, Mr. Young, other than the two incidents when
you say you were at home sleeping or—how many times were you arrested
for no reason?

"A. Off the top of my head, two more times, anyway. Once for interfering
and once for reckless driving.

"Q. And each one of those times, you did nothing wrong in those cases.
Is that right?

"A. No.

"Q. Yes, no?

"A. Well, I—

"Q. Did you do anything wrong in those cases or did you not deserve to
be arrested?

"A. No, I didn't.

"Q. You didn't do anything wrong.

"A. No.

In his original brief to this court, the defendant claimed that the trial court improperly allowed the state to impeach him with prior acts of misconduct. He further claimed that the prosecutor's line of questioning with regard to those prior acts constituted prosecutorial misconduct requiring reversal of his convictions.[4] We disagree.

At the outset, we set forth our standard of review and the applicable law. "A trial court's ruling on the admissibility of evidence is afforded great deference. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 263, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). Moreover, we have previously recognized that "if a party delves into a particular subject during examination, he is said to have 'opened the door' for further examination regarding that subject. *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986). The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice." (Internal quotation marks omitted.) *State* v. *Morascini*, 62 Conn. App. 758, 766, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001).

After reviewing the record, we conclude that the court properly exercised its discretion in finding that

---

"Q. In fact, you never do anything wrong, do you, Mr. Young?"

[4] With respect to the defendant's argument that the prosecutor's questioning constituted misconduct that deprived him of his right to a fair trial, the defendant does not adequately support that claim. We therefore conclude that any argument that the prosecutor's questions constituted prosecutorial misconduct and deprived the defendant of his right to a fair trial has been waived. Nevertheless, our review of the evidence convinces us that the prosecutor's questioning does not rise to the level of prosecutorial misconduct.

the defendant had opened the door to questions about his prior arrests and that the state was entitled to cross-examine him on the subject. Therefore, we conclude that the court properly permitted evidence of the defendant's prior acts of misconduct. Finally, we do not agree that the cross-examination so prejudiced the defendant as to warrant a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.