STATE OF CONNECTICUT *v.* WILLIAM
DRAKEFORD, JR.
(AC 19048)

Lavery C. J., and Landau and Pellegrino, Js.

Argued November 30, 2000—officially released May 15, 2001

*William B. Westcott,* special public defender, for the appellant (defendant).

*Linda N. Howe,* assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, William Drakeford, Jr., appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (5), and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5). On appeal, the defendant claims that his constitutional rights under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut were violated when the trial court failed to disqualify his trial counsel who, allegedly, had a conflict of interest in connection with his professional obligations to the defendant. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. On October 26, 1996, Nigel Douglas and Desmond Padilla were sitting on the front porch of 132 Lansing Street in Bridgeport. A car approached in front of the residence and stopped. At trial, there was a dispute as to whether the defendant remained in or exited the vehicle. It was undisputed that at least one male got out of the car, and made a remark to Douglas and Padilla to the effect that they like "robbing people." Thereafter, gunshots were fired from the car in the direction of the house, striking Padilla. The state's theory of the case was that the shooting was in retaliation for Douglas' participation in a previous robbery involving a number of perpetrators. Because Padilla was not involved in the robbery, the state reasoned that Douglas was the intended target of the shooting.

Prior to the trial, the state filed a motion to disqualify the defendant's trial counsel, attorney Joseph Mirsky, on March 31, 1998. Mirsky had filed an appearance for Douglas and Richard Foster, a codefendant in the robbery case, but his appearance for Douglas was withdrawn shortly thereafter. The state argued that, as a result of his prior representation in the robbery case, Mirsky might have obtained information from Douglas as to whether the defendant was a witness to the robbery or had information about the robbery.

At the April 15, 1998 hearing on the state's motion, Mirsky informed the court that there was no conflict in the present case because he had represented Douglas, a key witness in the state's case against the defendant, in a previous matter. He stated that he never appeared in court to represent Douglas, never engaged in pretrial discussions on Douglas' behalf and never represented Douglas in any dispositions. Mirsky further assured the court that he had received no information from Douglas that he could use to cross-examine him more vigorously as a witness. Mirsky claimed that he did not know the disposition of Douglas' case until he saw a reference to it in Foster's presentence report and that he did not know who represented Douglas after he withdrew. Mirsky assured the court that there was no conflict in his representation of the defendant because he had learned of no information regarding Douglas from his brief representation of him in the robbery case. Thereafter, the court denied the state's motion on April 20, 1998.

Prior to the selection of a jury on July 21, 1998, the court revisited the issue of whether a conflict existed in Mirsky's representation of the defendant. At that time, the state provided Mirsky with a complete copy of the state's file on Douglas for his review, prior to the start of the defendant's trial, for any material that would indicate the existence of a conflict. After

reviewing the materials, Mirsky again assured the court that no conflict existed.

At trial, numerous eyewitnesses testified about the events surrounding the shooting. Padilla claimed that the defendant, who was present in the car, was not the shooter. Padilla testified that only the driver, whom he did not know, got out of the car and shot at him. He further claimed that he knew the defendant from high school, where they were classmates. Patricia Holder and her daughter, Sharnell Holder, lived on Lansing Street and were washing their car in their driveway at the time of the shooting. Patricia Holder testified that a person got out of the driver's side door and fired at Douglas and Padilla, and that she saw the defendant get out of the passenger side and fire. Sharnell Holder testified that she saw someone exit the driver's side of the car, but that she did not see him fire his gun. She further testified that she saw the defendant get out of the passenger side and fire a gun.

Douglas testified in a manner consistent with Mirsky's assertion that no conflict existed from his previous brief representation of the state's witness. On direct examination, Douglas did not remember if the defendant was involved in the robbery. On cross-examination, Douglas testified that he recognized the defendant from the shooting. The jury found the defendant guilty, and the court sentenced him to an effective term of fifteen years incarceration. This appeal followed.

The defendant claims that the court's failure to disqualify Mirsky violated his right to conflict free representation guaranteed by the sixth amendment to the United States constitution.[1] The defendant contends

---

[1] The defendant also claims that the court committed reversible error by denying the state's motion to disqualify because an independent state constitutional analysis would reveal that article first, § 8, of the constitution of Connecticut affords greater and more extensive rights to counsel than does its federal counterpart, the sixth amendment. We find no merit in that claim. Our Supreme Court has clearly rejected the contention that our

that the court, after being alerted by the state's motion to the possible existence of a conflict, improperly relied on the representations of Mirsky that no conflict existed and instead, sua sponte, should have conducted a more thorough and searching inquiry. The defendant claims that the judgment of conviction should automatically be reversed on the ground of structural error[2] because the court failed to conduct a more thorough inquiry or to canvass him as to whether the alleged conflict of interest existed. In response, the state argues that the court satisfied its affirmative obligation to investigate the existence of the alleged conflict of interest and properly relied on Mirsky's assurance that no conflict existed. The state, therefore, claims that the court had

constitution affords greater and more extensive rights to counsel than does the federal constitution in the context of conflict free representation. *State* v. *Webb*, 238 Conn. 389, 413 n.23, 680 A.2d 147 (1996). "[T]he state and federal constitutional standards for review of ineffective assistance of counsel claims are identical." *Aillon* v. *Meachum*, 211 Conn. 352, 355–56 n.3, 559 A.2d 206 (1989); see *Phillips* v. *Warden*, 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991); see also *Chace* v. *Bronson*, 19 Conn. App. 674, 675, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

We further note that in *State* v. *Stoddard*, 206 Conn. 157, 166–67, 537 A.2d 446 (1988), our Supreme Court held that police are required, under article first, § 8, of the constitution of Connecticut, to inform a suspect, whom they are holding for custodial interrogation, of timely efforts by counsel to render legal assistance. Because the United States Supreme Court held that the federal constitution does not require that a suspect be so informed; see *Moran* v. *Burbine*, 475 U.S. 412, 422, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); we acknowledge that the constitution of Connecticut provides broader protection in that area than does its federal counterpart. *Stoddard*, however, is inapposite to the present case. "The focus in *Stoddard* on when the right to counsel attaches . . . has not the slightest bearing on the standard to be employed in assessing an ineffective assistance of counsel claim under either our federal or state constitutions." *Aillon* v. *Meachum*, supra, 355–56 n.3.

[2] If the court finds that the defendant has been denied the effective assistance of counsel as a result of a conflict of interest, an automatic reversal of the judgment of conviction is required because a structural defect in the mechanism of the trial exists. See *Glasser* v. *United States*, 315 U.S. 60, 76, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Anderson*, 55 Conn. App. 60, 73, 738 A.2d 1116 (1999), rev'd on other grounds, 255 Conn. 425, 773 A.2d 287 (2001).

no duty to investigate the conflict further or to canvass the defendant. We agree with the state and affirm the judgment of the trial court.

"The sixth amendment to the United States constitution[3] as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution,[4] guarantee to a criminal defendant the right to effective assistance of counsel. *Powell* v. *Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Festo* v. *Luckart*, 191 Conn. 622, 626, 469 A.2d 1181 (1983). Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *Festo* v. *Luckart*, supra, 626–27. This right requires that the assistance of counsel be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. *Glasser* v. *United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Marion*, 175 Conn. 211, 216, 397 A.2d 533 (1978)." (Internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 78–79, 513 A.2d 116 (1986). "Although rooted in the right to effective assistance of counsel, such a claim seeks to address the actions of the trial court during a criminal proceeding, not the actions of counsel." *State* v. *Phidd*, 42 Conn. App. 17, 34, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

"The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are

---

[3] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[4] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

officers of the court." (Internal quotation marks omitted.) *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 210, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993). "The trial court retains broad discretionary power [in determining] whether an attorney should be disqualified for an alleged . . . conflict of interest." (Internal quotation marks omitted.) *Walton* v. *Commissioner of Correction*, 57 Conn. App. 511, 515, 749 A.2d 666, cert. denied, 254 Conn. 913, 759 A.2d 509 (2000); see *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). Although we would otherwise review the court's decision to deny a motion to disqualify pursuant to the abuse of discretion standard of review; *State* v. *Webb*, supra, 417; *Fiddelman* v. *Redmon*, supra, 210; we do not apply that standard in the present case. See *State* v. *Cruz*, 41 Conn. App. 809, 811, 678 A.2d 506, cert. denied, 239 Conn. 809, 682 A.2d 1008 (1996). "There is a unique type of error that cannot be reviewed in terms of trial court discretion or abuse of discretion . . . because it is a defect in the trial mechanism itself that defies such an analysis and requires automatic reversal. In such cases, analysis in terms of whether discretion was abused cannot be utilized because the defect is incurable and not correctable. The defect cannot, by definition, ever be cured by a discretionary act." *State* v. *Anderson*, 55 Conn. App. 60, 72, 738 A.2d 1116 (1999), rev'd on other grounds, 255 Conn. 425, 773 A.2d 287 (2001); *In re Deana E.*, 61 Conn. App. 197, 209–10, 763 A.2d 45 (2000), cert. denied, 255 Conn. 941, 768 A.2d 949 (2001). Accordingly, "[w]hen a structural error analysis is undertaken and such an error exists, the proceeding is vitiated. See *Arizona* v. *Fulminante*, [499 U.S. 279, 309–10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)] . . . ." (Citations omitted.) *State* v. *Anderson*, supra, 73–74; *State* v. *Cruz*, supra, 811.

In *State* v. *Martin*, supra, 201 Conn. 83, our Supreme Court held that "when counsel makes a timely assertion

of a conflict of interest, the trial court is under an affirmative obligation to make an adequate inquiry on the record to establish whether there is a conflict of interest." "A trial court's failure to inquire in such circumstances constitutes the basis for reversal of a defendant's conviction. *Holloway* v. *Arkansas*, [435 U.S. 475, 488, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)]." *State* v. *Crespo*, 246 Conn. 665, 686, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner. See *Holloway* v. *Arkansas*, supra [484]; *Festo* v. *Luckart*, [supra, 191 Conn. 627]." *State* v. *Martin*, supra, 82. The court's "inquiry depends upon the circumstances of the particular case." Id. In *Martin*, the court found error in the trial court's summary denial of defense counsel's motion to withdraw without conducting any inquiry whatsoever into the existence of a conflict. Id., 83.

In the present case, the state sought to disqualify Mirsky, claiming that there was a conflict in his representation of the defendant. Unlike the court in *Martin*, the court in this case inquired as to whether a conflict existed both in response to the state's motion to disqualify on April 15, 1998, and prior to selecting a jury on July 21, 1998. In both instances, Mirsky stated, in response to the court's inquiries, that he did not currently represent the witness, his actual representation of the witness was brief in nature and that his past representation of the witness would not conflict with his present representation of the defendant. It is well settled that during the course of its inquiry as to the existence of a conflict, "the trial court must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist." (Internal

quotation marks omitted.) Id., 82; *State* v. *Cruz*, supra, 41 Conn. App. 814. Therefore, because the court may rely on "the solemn representation of a fact made by [the] attorney as an officer of the court"; (internal quotation marks omitted) *State* v. *Martin*, supra, 201 Conn. 82; the court in the present case properly accepted Mirsky's assurance that the alleged conflict did not, in fact, exist.

Furthermore, the defendant was not prejudiced by Mirsky's previous brief representation of Douglas. To the detriment of the state's case, Douglas testified on direct examination that he did not remember whether the defendant was a participant in the robbery. On cross-examination, Mirsky's failure to inquire further as to the circumstances surrounding the robbery effectively prevented the state from rehabilitating its witness during its redirect examination. Mirsky's decision to prevent the state from rehabilitating its witness cannot amount to a lapse of representation. Moreover, Mirsky vigorously cross-examined Douglas on other aspects of his testimony. He established that Douglas was claiming only that he recognized the defendant from the shooting, and employed Douglas' testimony to establish an inconsistency between his account of the crime and that of other witnesses to the shooting. An attorney's line of questioning on examination of a witness clearly is tactical in nature. This court will not, in hindsight, second-guess counsel's trial strategy. *Cosby* v. *Commissioner of Correction*, 57 Conn. App. 258, 261, 748 A.2d 352 (2000); *Summerville* v. *Warden*, 29 Conn. App. 162, 176, 614 A.2d 842 (1992), rev'd on other grounds, 229 Conn. 397, 641 A.2d 1356 (1994). Our review of the record indicates that Mirsky's line of questioning during his cross-examination of Douglas does not amount to a lapse in his representation of the defendant. We therefore conclude that the defendant was not prejudiced by his counsel's prior representation of Douglas.

Therefore, because the court properly satisfied its affirmative obligation to explore the alleged conflict of interest after being alerted to its possible existence, and because the defendant was not prejudiced by his counsel's previous brief representation of the state's witness, we must conclude that the defendant was not deprived of his constitutional right to conflict free representation.[5] Accordingly, we conclude that no structural error exists in the defendant's trial.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

LANDAU, J., concurring. I fully agree with the majority's conclusion that the trial court properly investigated and determined that no conflict of interest existed, and that it was, therefore, unnecessary for the trial court to inquire further or to obtain a waiver from the defendant. The cases in our jurisdiction have, to date, required a specific showing of prejudice or a real conflict of interest resulting from joint representation of codefendants by one attorney before sixth amendment rights may be said to have been assailed. See *State* v. *Crespo*, 246 Conn. 665, 689, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999); *State* v. *Webb*, 238 Conn. 389, 421, 680 A.2d 147 (1996); *Phillips* v. *Warden*, 220 Conn. 112, 133, 595 A.2d 1356 (1991). Under that test, which is the law of the jurisdiction each judge is bound to follow, I am required to concur here, for the reasons well stated in the majority opinion.

---

[5] We note that the defendant further claims that before proceeding with the trial, the court should have elicited a knowing and intelligent waiver from the defendant of his constitutional right to conflict free representation. Because we have determined that the court properly investigated and determined that no conflict of interest existed, it was unnecessary for the court to inquire further or to obtain a waiver from the defendant. See *State* v. *Cruz*, supra, 41 Conn. App. 816.

I believe, however, that the time has come for us to reexamine our rule. Our growing criminal calendars and the need to try a larger percentage of criminal cases under the provisions of state statutes and rules of court that require the prompt disposition of criminal cases[1] have made it all the more necessary for our trial courts to take all measures to avoid the necessity of retrying multidefendant cases. Although I am reluctant to say so, this court has a substantial backlog of appeals.[2] As long ago as 1975, the American Bar Association stated: "Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation. ABA Standards Relating to the Prosecution Function and the Defense Function § 3.5 (Approved Draft 1971) at 211, 213." *United States* v. *Mari*, 526 F.2d 117, 120 (2d Cir. 1975) (Oakes, J., concurring), cert. denied, 429 U.S. 941, 97 S. Ct. 359, 50 L. Ed. 2d 311 (1976).

In *Mari*, Judge Oakes of the United States Court of Appeals for the Second Circuit appropriately pointed out: "The problem is that even [absent a trial when] both codefendants pleaded guilty there are frequently

[1] See General Statutes § 54-82c (prisoner's right to speedy trial on pending charges); Practice Book § 43-39 (speedy trial; time limitations).

[2] In the month that this case was argued, there were more than 300 cases ready for argument and almost 800 other appeals filed, but not yet ready for oral argument.

potential conflicts of interest. As the ABA Standards, supra, at 213, point out, the prosecutor may be inclined to accept a guilty plea from one codefendant which may harm the interests of the other. The contrast in the dispositions of the cases may have a harmful impact on the codefendant who does not initially plead guilty; he may be pressured into pleading guilty himself rather than face his codefendant's bargained-for testimony at a trial. And it will be his own counsel's recommendation to the initially pleading co-defendant which will have contributed to this harmful impact upon him. . . . As the ABA Standards . . . also point out, the very fact of multiple representation makes it impossible to assure an accused that his statements to the lawyer are given in full confidence. . . .

"I should make it clear that in my view it is immaterial whether we are talking about trying a case or handling a plea of guilty . . . . It also makes no difference whether counsel is appointed by the court or selected by the defendants; even where selected by the defendants the same dangers of potential conflict exist, and it is also possible that the rights of the public to the proper administration of justice may be affected adversely." Id., 120–21.

To those thoughts of Judge Oakes, I would add those of Judge Lumbard of the Second Circuit, which are found in a concurring opinion in *United States* v. *Carrigan*, 543 F.2d 1053 (2d Cir. 1976): "It would be a rare defendant who could intelligently decide whether his interests will be properly served by counsel who also represents another defendant. However parallel his interests may seem to be with those of a co-defendant the course of events in the prosecution of the case, the taking of a guilty plea, or the conduct of the trial may radically change the situation so as to impair the ability of counsel to represent the defendant most effectively. Even defense counsel, who all too frequently are not

adequately informed regarding the evidence available against their clients, may not be in a position to judge whether a conflict of interest between their clients may develop.

"It is a rare defendant in a criminal case who fully advises his own counsel of all he knows about the charges against him. Accordingly, most counsel must operate somewhat in the dark and feel their way uncertainly to an understanding of what their clients may be called upon to meet upon a trial. Consequently, counsel are frequently unable to foresee developments which may require changes in strategy." Id., 1058 (Lumbard, J., concurring).

I would be foolish to ignore the assertion, sure in coming, of the right of defendants to retain counsel of their choice. There will, however, be cases in which the trial court should require separate counsel to represent certain defendants despite the expressed preferences of such defendants. The right to effective representation by counsel whose loyalty is undivided is so paramount in the proper administration of criminal justice that it must, in some cases, take precedence over all other considerations, including the expressed preference of the defendants concerned and their attorney.

I do not propose any rule that would per se prohibit dual representation. I also do not intend to speak for a majority of the members of this court or to imply that the High Court on Capitol Avenue, "[That Which] Must Be Obeyed,"[3] would agree to such a rule. I would propose, however, that given the availability of funds for counsel for the indigent and the probability of conflicts

---

[3] With apologies to Rumpole. See J. Mortimer, Rumpole of the Bailey (England: Chivers 1992) p. 1. Rumpole covertly refers to his wife, Hilda, as "She Who Must Be Obeyed." The phrase is from H. Rider Haggard's adventure novel, She, A History of Adventure (McKinlay, Stone & MacKenzie 1886). In She, A History of Adventure, the title character, Ayesha, Queen of Kor, is known to her subjects as SWMBO (She Who Must be Obeyed).

of interest inherent in dual representation, it should be only after the most searching inquiry on the part of the court and in those exceptional circumstances in which a conflict is not within the realm of reasonable foreseeability that dual representation by defense counsel should be permitted. Such a rule would prevent both the occasional injustice and, equally important, the appearance of injustice. Essentially, by the time a case gets to the appellate level, the harm to the appearance of justice has already been done whether or not the reversal occurs. At the trial level, such injustice is a matter that is so easy to avoid.

Trial courts should insist that, except in extraordinary circumstances, codefendants retain separate counsel. In the long run, in my opinion, this practice will prove beneficial not only to the administration of justice and the appearance of justice, but to the cost of justice. Habeas corpus petitions, petitions for new trials, appeals and retrials can be avoided. Issues on appeal as to whether there is an actual conflict of interest, whether the conflict has resulted in prejudice, whether there has been a waiver, and whether the waiver was intelligent and knowledgeable, for example, can be avoided. Continuances or mistrials can also be avoided in those instances in which a conflict that was not apparent initially subsequently arises.

The right to counsel is a fundamental one. *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Only after the greatest scrutiny and in exceptional circumstances should dual representation, which may so frequently impair this right, be sanctioned by a trial court.