CHRISTOPHER DWYER *v.* COMMISSIONER
OF CORRECTION
(AC 21136)

Landau, Mihalakos and Daly, Js.

Argued December 3, 2001—officially released May 7, 2002

*Mark J. Rochon,* with whom were *David T. Grudberg* and, on the brief, *Norman A. Pattis,* for the appellant (petitioner).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (respondent).

LANDAU, J. This habeas corpus appeal raises an issue of first impression in this state, namely, whether a criminal defense counsel's failure to inform the defendant of the state's willingness to enter into plea negotiations constitutes ineffective assistance of counsel. The petitioner, Christopher Dwyer, claims here that the habeas court abused its discretion by denying his request for certification to appeal from its denial of his petition for a writ of habeas corpus. In the habeas court, the petitioner claimed that his trial counsel failed to inform him of the state's willingness to enter into a plea bargain in violation of his constitutional right to effective assistance of counsel as set forth in *Boria* v. *Keane*, 99 F.3d 492 (2d Cir. 1996).[1] Under the facts of this case, we conclude that the petitioner was not deprived of his constitutional right to the effective assistance of counsel pursuant to *Boria*[2] and *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We therefore dismiss the appeal.

To prevail on an appeal from the habeas court's denial of a petition for certification to appeal, the petitioner must make a substantial showing that he has been denied a state or federal constitutional right and that in

[1] We note that the petitioner has changed the substance of his claim from that raised in his posthearing brief to his motion for articulation to the claims raised on appeal here and the claim articulated in his brief. It is well settled that this court does not consider claims not raised in the habeas court. Practice Book § 60-5; *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). We therefore address the claim addressed by the habeas court when, sua sponte, it amended the petition for a writ of habeas corpus.

[2] The United States Court of Appeals for the Second Circuit has held in accordance with the Model Code of Professional Responsibility (1992) that "[a] defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable.*" (Emphasis in original.) *Boria* v. *Keane*, supra, 99 F.3d 496, quoting American Bar Association Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992).

denying certification to appeal, the habeas court clearly abused its discretion and that an injustice has been done. See *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994); *Simms* v. *Warden*, 229 Conn. 178, 189, 640 A.2d 601 (1994); *Walker* v. *Commissioner of Correction*, 38 Conn. App. 99, 100, 659 A.2d 195, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995); see also *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). "To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the *underlying claim* involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis in original; internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 68 Conn. App. 1, 4, 790 A.2d 463, cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002).

The following procedural background provides the context for the petitioner's appeal. In May, 1995, the petitioner was convicted by a jury of twelve of murder in violation of General Statutes § 53a-54a (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a).[3] Following his conviction, the trial court

[3] On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. Immediately prior to the events that resulted in the petitioner's conviction, Marjorie Wright (victim) was living with the petitioner at 36 Laurel Court in Bridgeport. The victim decided to leave the petitioner because he apparently was involved romantically with other women. On the morning of July 31, 1990, the victim asked her brother, Leeton Wright, to help her remove her things from the petitioner's home. When the Wrights arrived at 36 Laurel Court, the petitioner was asleep in one of the bedrooms. Wright noticed a gun on the dresser in the room where the petitioner was sleeping. A man known as Haggler, a friend of the petitioner, had been staying at 36 Laurel Court for a few weeks and was present in the kitchen.

As the victim was collecting her belongings, the petitioner awoke and began to argue with the victim. Leeton Wright advised the victim to collect her things and leave. The petitioner emerged from the bedroom and fired a shot at the victim, striking her in the chest. Leeton Wright and the victim escaped from the house, and the victim collapsed in the street. The petitioner

sentenced him to fifty years in the custody of the respondent commissioner of correction. This court affirmed the petitioner's conviction in *State* v. *Dwyer*, 45 Conn. App. 584, 696 A.2d 1318, cert. denied, 243 Conn. 910, 701 A.2d 335 (1997). Thereafter, in 1998, the petitioner filed a petition for a writ of habeas corpus, alleging five bases for his claim that he was denied effective assistance of counsel at trial. At the time of the habeas hearing, the petitioner withdrew two of the alleged bases for his claim. In his posthearing brief, the petitioner raised a new basis "that counsel failed to adequately advise [the] petitioner about whether to enter a plea."[4] Although that allegation was not included in his original petition and the petitioner did not amend his petition, he offered evidence about it at the habeas hearing without objection from the respondent. The court, therefore, in its memorandum of decision, sua sponte amended the petition to include the allegation. In his appeal to this court, the petitioner has abandoned all bases of his claim of ineffective assistance of counsel except that counsel failed to advise him adequately about whether to enter a plea and the state's willingness to enter into renewed plea negotiation on the eve of trial. We now turn to the facts found and the conclusions drawn by the habeas court with respect to the petitioner's claim on appeal.

After the petitioner was extradited from Jamaica, where he had fled after the murder, he remained in pretrial confinement until the time of trial in 1994. He

followed them and tried to attend to the dying victim, crying, "I'm sorry." When the petitioner heard sirens approaching, he left the scene, running into the house and out the back door. Haggler also left the scene. The petitioner fled to Jamaica, where he remained until he was extradited to stand trial in 1994.

[4] The habeas court found that the petitioner had presented that claim by transforming one of his original claims, which alleged that "[c]ounsel for petitioner failed to communicate to the petitioner that it was the petitioner's decision about whether to testify, and failed adequately to advise him on whether to testify or not."

was represented while he was confined and through a portion of jury selection by William R. Schipul, a public defender. During jury selection, the petitioner became dissatisfied with his public defender and asked his family to obtain private defense counsel for him. In the petitioner's opinion, his public defender was too negative about the prospect of the petitioner's prevailing at trial.[5]

The petitioner's mother and sister therefore approached Dante R. Gallucci, private defense counsel, to ask him if he would defend the petitioner at trial. Gallucci spoke with the public defender by telephone about the case. After hearing that the case was relatively simple although the underlying facts were tragic, Gallucci agreed to defend the petitioner. Gallucci met with the petitioner and spent five to six hours with the public defender reviewing the file and the theory of defense developed by the public defender. Gallucci was aware of the public defender's reputation for thoroughness, and was satisfied that he had prepared and investigated the case fully.

---

[5] On direct examination at the habeas hearing, the petitioner testified as follows:

"[Petitioner:] [Attorney Dante R. Gallucci, private defense counsel,] came to represent me, and I had a jury picked when I found out that [the public defender] wasn't representing me accurately. I felt like he was gonna—I felt like [I was] gonna lose the trial, the case, so I suggest to my people that—my family, that I need a lawyer to represent me. That I—I think I supposed to accurately [be] represented.

"[Petitioner's Counsel]: You did—what was your—you didn't feel [the public defender] was representing you well?

"[Petitioner:] No. sir.

"[Petitioner's Counsel:] What was he doing wrong?

"[Petitioner:] He was—the way he was talking to me. He was talking to me in some negative way.

"[Petitioner's Counsel:] Meaning negative in what respect?

"[Petitioner:] Like I think he—I'm gonna lose this trial or something.

"[Petitioner's Counsel:] Okay.

"[Petitioner:] You know? This trial, the state got a lot of evidence on you, I don't believe you're gonna win this case."

After speaking with the public defender and the petitioner, Gallucci understood the defense theory, i.e., that a man known as Haggler, a friend of the petitioner who was in the petitioner's apartment before the victim, Marjorie Wright, and her brother, Leeton Wright, arrived, had a gun and was attempting to shoot the petitioner when he accidentally shot the victim. In presenting the case for the defense, Gallucci chose not to involve Haggler, whose whereabouts were unknown at the time of trial, because he thought it was unlikely that Haggler would help the defense by implicating himself and his testimony would more likely support Wright's testimony that the petitioner shot the victim.

When he entered the case, Gallucci did not request a continuance or a mistrial because he did not think that he needed one and because the petitioner wanted to proceed to trial. The petitioner was adamant about wanting a trial and wanting it immediately. When he entered the case, Gallucci knew nothing about an offer to plea bargain from the state.

The habeas court noted that the only evidence of a plea agreement came from the petitioner, who testified that while the public defender was representing him, the prosecutor proposed a plea bargain of twenty years in prison, suspended after eighteen years. The petitioner was of the opinion that that was a lot of time for someone "who didn't do it." According to Gallucci, he was not informed of that offer. John C. Smriga, the assistant state's attorney who assumed responsibility for prosecuting the case sometime well before trial, had not made an offer, and the file did not reflect that another assistant state's attorney had done so. Smriga broached the prospect of plea bargaining the case with the public defender, who had told Smriga that the petitioner was not interested in a plea and wanted a trial.[6]

---

[6] The public defender was not called as a witness at the habeas hearing.

Smriga also asked Gallucci whether there was some way of resolving the case and was told "no." Gallucci's response to Smriga was consistent with that of the public defender.

The petitioner testified that during the criminal trial, Smriga gestured to Gallucci that he wanted to speak to him. The petitioner assumed that Smriga wanted to discuss a more favorable plea offer. The petitioner claimed that he had told Gallucci about the original offer of twenty years and that he asked Gallucci three or four times to talk to the prosecutor about a lower offer. The habeas court found no support for the petitioner's testimony and concluded that it was pure speculation, as there was no evidence of any original offer of twenty years, suspended after eighteen, that was being lowered during the criminal trial.[7]

---

[7] On direct examination at the habeas hearing, the petitioner testified as follows:

"[Petitioner's Counsel:] After jury selection in your case . . . did you have a change of heart at all about whether to enter a plea?

"[Petitioner:] After seeing the prosecutor [indicate] to my lawyer that he wanted to talk to him, so my suggestion was like he probably wants some—wanted to make some plea or something. So, I—I told my lawyer, go see what the prosecutor saying 'cause he probably want to talk about some time or something. He probably talking about some lesser time or something than the eighteen years.

"[Petitioner's Counsel:] Um-hmm . . . .

"[Petitioner:] And he—my lawyer look at me and say, I don't think he gonna come down much, any way. And this—at last we— right now we got a good case, you know what I'm saying? He say right now I got a good case, we got a good chance of beating the case so it don't make no sense going over to him. So, might as well we go all the way.

* * *

"[Petitioner's Counsel:] What led you to conclude that the prosecutor wanted to talk to Mr. Gallucci?

"[Petitioner:] He give him a—a hand signal. He call him with his hand.

"[Petitioner's Counsel:] You mean, so he gestured as to come over here?

"[Petitioner:] Yeah, yeah, so even after the judge state to my—my attorney, Mr. Gallucci, said to him the prosecutor want to talk to you about some bargain, some time, some bargain or something. And he—he just shake his head, no.

"[Petitioner's Counsel:] Mr. Gallucci shook his head and said no?

In its memorandum of decision, the court concluded that the petitioner wanted a trial, and was not interested in admitting his guilt and spending any time in prison. In fact, the petitioner still was proclaiming his innocence at the time of the habeas hearing.[8] The court also

---

"[Petitioner:] Yeah, yeah, so I went—I repeat back to him, I say, can you just at least go find out what—what he talking about? He said, no, I know what he talking about. He talking about some lesser time or something like that. So, I'm saying, you don't know what he talking about. He might have given a good deal or something, you know what I'm saying? 'Cause I don't really want to, you know, I don't really want to really [get] caught up in a bad trap here, you know what I'm saying? I know may case it carry a lot of time and everything. And he said, no, you gonna beat the case. You don't need—

"[Petitioner's Counsel:] Your lawyer told you you're gonna beat the case?

"[Petitioner:] Yeah.

\* \* \*

"[Petitioner's Counsel:] I thought you said at that point you had—you assumed that the—the offer might be lower?

"[Petitioner:] Yes.

"[Petitioner's Counsel:] Was that—did you assume that it might be lower from the eighteen to twenty year range?

"[Petitioner:] Yes, sir.

"[Petitioner's Counsel:] Why did you make that assumption?

"[Petitioner:] Because of the way he was calling. He was desperate, like he wanted to make a—wanted to make some deal.

"[Petitioner's Counsel:] Um-hmm . . . .

"[Petitioner:] So—and I knew that I was facing a lot of time when I—when I seen him making the suggestion like calling him—calling my [lawyer] toward him, I knew it was at the time he wanted to make some deal or something.

"[Petitioner's Counsel:] Um-hmm . . . .

"[Petitioner:] So, I told him go see him. And he said, no.

"[Petitioner's Counsel:] You told your lawyer to go and talk to the prosecutor and your—your lawyer said no?

"[Petitioner:] No.

"[Petitioner's Counsel:] How certain are you of that, Mr. Dwyer?

"[Petitioner:] One hundred percent."

[8] On cross-examination the petitioner testified as follows.

"[Respondent's Counsel]: Mr. Dwyer, did you tell [the public defender] that, in fact, you did not shoot [the victim]? Your first lawyer, [the public defender].

"[Petitioner:] Yes, yes.

"[Respondent's Counsel:] And did you tell Mr. Gallucci that you did not shoot [the victim]?

concluded that there was no credible evidence that a plea bargain of twenty years, suspended after eighteen, had ever been made. The court reasoned that the public defender had told the petitioner that he would probably lose the case, which was not what the petitioner wanted to hear. The petitioner therefore fired the public defender and hired Gallucci to try the case, which is what the petitioner wanted. Gallucci told the petitioner that there was a good chance he could win. The court concluded in its memorandum of decision: "That is what the petitioner wanted to hear and is what he got, a trial. The court finds *no credibility* to the petitioner's claim that he asked his counsel to seek or negotiate a plea." (Emphasis added.)

The court denied the petitioner's petition for a writ of habeas corpus and his petition for certification to appeal. The petitioner subsequently filed a motion for articulation, asking the court to state the basis for denying his petition for certification to appeal on the issue of whether the court misapplied the holding of *Boria* v. *Keane*, supra, 99 F.3d 492.[9] The court denied the

"[Petitioner:] Yes, ma'am.

"[Respondent's Counsel:] And is it your testimony as you sit here today that you did not shoot [the victim]?

"[Petitioner:] Yes, ma'am.

"[Respondent's Counsel:] So your claim all along has been innocence? You've maintained all along—

"[Petitioner:] Yeah.

"[Respondent's Counsel:] —that you were not responsible for the death of [the victim]?

"[Petitioner:] Yes.

"[Respondent's Counsel:] And that didn't change at any point during the trial or even up until today's testimony?

"[Petitioner:] Yes, ma'am.

"[Respondent's Counsel:] And I believe you said that you had the impression that [the public defender] had an offer for twenty—twenty years, execution suspended after eighteen, and you did not take that offer because you were innocent; is that correct?

"[Petitioner:] The first time, yes."

[9] In *Boria*, defense counsel failed to convey an offer to plead to the defendant, who was accused of selling narcotics, a class A-II felony under

motion for articulation, stating: "The reasons for the court's denial of the [petition for a] writ of habeas corpus are fully set forth in the [habeas] court's lengthy memorandum of decision. This court concludes, based on the evidence, that there is no question with reference to the holding of *Boria* v. *Keane*, [supra, 99 F.3d 492] that ought to be reviewed by the Appellate Court." On the basis of our review of the record, briefs, the law, including *Boria* and its progeny, we agree with the habeas court.

To prevail on a petition for a writ of habeas corpus, the petitioner must demonstrate that defense counsel's representation "fell below an objective standard of reasonableness"; *Strickland* v. *Washington*, supra, 466 U.S. 688; and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 694. "Because the petitioner must satisfy both prongs of the *Strickland* test to prevail on a habeas corpus petition, this court may dispose of the petitioner's claim if he fails to meet either prong." *Denby* v. *Commissioner of Correction*, 66 Conn. App. 809, 813, 786 A.2d 442 (2001), cert. denied, 259 Conn. 908, 789 A.2d 994 (2002). In this instance, we need not decide whether defense counsel's representation fell below an objective standard of reasonableness by failing to inform the petitioner of an

New York State law. The plea bargain offered to the defendant would have resulted in a one year to three year sentence. The district attorney warned defense counsel that if the plea was rejected, he would file an amended indictment for a class A-I felony, which precluded plea bargaining. The defendant did not want to plead guilty because it would embarrass him in front of his children. Defense counsel permitted the defendant to reject the offer without giving him any advice as to the wisdom of doing so. The defendant was convicted and sentenced to twenty years to life in prison. After serving six years of his sentence, the defendant filed a petition for a writ of habeas corpus, asserting that he was denied effective representation by counsel because his counsel permitted him to reject the one year to three year plea offer. *Boria* v. *Keane*, supra, 99 F.3d 494–95.

offer to plea bargain.[10] First, the habeas court found that neither Smriga nor the assistant state's attorney who prosecuted the case previously had communicated a plea bargain to either the public defender or Gallucci, and therefore *Boria* does not apply. Second, on the basis of the facts found by the habeas court, we conclude that there was no reasonable probability that the result of the criminal trial would have been different because the petitioner made it clear to both the public defender and Gallucci that he did not want to plead guilty.

"When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) Id.

"This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . *Colon* v. *Com-*

---

[10] Although we leave to another day the question of whether criminal defense counsel has a duty to inform a defendant of an offer to plea bargain, defense counsel in this jurisdiction would do well to note the dicta of the United States Court of Appeals for the Second Circuit: "There seems to be no Second Circuit decision dealing with the precise question of a criminal defense lawyer's duty when a defendant's best interests clearly require that a proffered plea bargain be accepted, but the defendant, professing innocence, refuses to consider the matter. This lack of specific decision undoubtedly arises from the circumstances that such duty is so well understood by lawyers practicing in this Circuit that the question has never been litigated." *Boria* v. *Keane,* supra, 99 F.3d 496; see also *Cullen* v. *United States,* 194 F.3d 401 (2d Cir. 1999); compare *Purdy* v. *United States,* 208 F.3d 41, 45 (2d Cir. 2000) (counsel must steer course between "the Scylla of inadequate advice and the Charybdis of coercing a plea").

*missioner of Correction,* 55 Conn. App. 763, 765, 741 A.2d 2 (1999), cert. denied, 252 Conn. 921, 744 A.2d 437 (2000). The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. *Velez* v. *Commissioner of Correction,* 57 Conn. App. 307, 309, 748 A.2d 350 (2000); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 125a, p. 1219." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* 66 Conn. App. 850, 851, 785 A.2d 1225 (2001).

Here, the court found that the only evidence of an offer to plea bargain was the petitioner's testimony, which the court found was not credible. The court concluded that no plea offer ever had been made to the petitioner. For that reason, the court properly concluded in denying the petitioner's motion for articulation that there was no aspect of *Boria* that this court ought to review. *Boria* held that criminal defense counsel has the "duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boria* v. *Keane,* supra, 99 F.3d 496. The petitioner's claim on appeal is not consistent with the holding of *Boria.* The petitioner's claim is that criminal defense counsel has a duty to convey to a defendant the state's willingness to enter plea negotiations.[11]

Even if we were to assume, which we do not, that the petitioner's claim is consistent with the facts of *Boria,* we would come to the same conclusion. As the habeas court concluded, the petitioner was not interested in pleading guilty and spending time in prison. He wanted a trial. The petitioner made the ultimate

[11] In his principal brief, the petitioner concedes that there is no precedent for his claim on appeal to this court: "Although the [United States Court of Appeals for the] Second Circuit and the courts of this state have yet to conclude that counsel has a duty to convey to a client a prosecutor's willingness to bargain, that duty flows naturally and necessarily from *Boria* and its progeny and related cases."

decision. See *Purdy* v. *United States*, 208 F.3d 41, 43–44 (2d Cir. 2000). In his appeal, the petitioner wants this court to overlook the fact that his public defender informed him of the weaknesses in his case. The petitioner dismissed his public defender because he thought the public defender was negative and not representing him properly. The petitioner asked his people to find him a lawyer who would try the case. See footnote 5. Even if we were to assume, only for the sake of argument, that Smriga, through Gallucci, had offered the petitioner a plea bargain, the facts of this case indicate that there was no reasonable probability that the petitioner would have pleaded guilty. He has steadfastly denied, even at the habeas hearing, that he killed the victim. The petitioner's attitude at trial also supports the conclusion that he would have rejected any invitation to enter plea negotiations.

We therefore conclude that the petitioner has failed to meet his burden of demonstrating that he has been denied a constitutional right, and we conclude that the court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.