## MICHAEL MITCHELL v. COMMISSIONER
OF CORRECTION
(AC 27957)

Gruendel, Beach and Borden, Js.

------

Argued April 14—officially released August 19, 2008

*David B. Rozwaski*, special public defender, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Scott J. Murphy*, state's attorney, and, on the brief, *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BORDEN, J. The petitioner, Michael Mitchell, appeals from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. On

appeal, the petitioner contends that he is entitled to a reversal of his conviction and a new trial because of the ineffectiveness of the legal assistance he received from his trial counsel. Specifically, the petitioner claims that he was denied effective assistance because his trial counsel failed (1) to preserve sentence review rights, (2) to present a plea bargain offer to him and to inform him of the risks of trial, (3) to object to improper statements made by the prosecutor during closing arguments to the jury, (4) to object to references to his prior criminal history, (5) to cross-examine the state's witnesses properly and (6) to prepare adequately for trial by not locating witnesses. We affirm the judgment of the habeas court.

The following facts and procedural history provide the necessary background to the disposition of the petitioner's appeal. The petitioner was convicted, after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), robbery in the second degree in violation of General Statutes § 53a-135 (a) (2), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (1) and 53a-70 (a) (1), and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On direct appeal, we affirmed the judgment of conviction. *State* v. *Mitchell*, 59 Conn. App. 523, 757 A.2d 1137 (2000), cert. denied, 256 Conn. 901, 772 A.2d 598 (2001).

In the petitioner's direct appeal, this court determined that the jury reasonably could have found the following facts. "On February 6, 1996, the [petitioner] entered the victim's boutique in New Haven. He showed the victim his wedding band and told her that he was looking for a Valentine's Day gift for his wife. Several customers entered and left the store while the victim

showed the [petitioner] some pieces of jewelry. When the store was empty, the [petitioner] grabbed the victim's arm and told her that he was there to rob her. Noticing a pointed object protruding from the [petitioner's] jacket pocket, the victim gave him money from a desk drawer. The [petitioner] then pushed her into the dressing room where he sexually assaulted her. . . . He then went behind the desk, threw her purse at her and ordered her to dump everything out. He rifled through its contents and took money from another purse containing business proceeds. He then wiped the counters and the desk with a scarf from the store and, after the victim pleaded for her life, he left. The victim immediately called the police and later identified the [petitioner] as the perpetrator.

"At trial, the [petitioner] presented an alibi defense. Specifically, his girlfriend testified that she picked up the [petitioner] at his grandmother's home on February 2, 1996. She further testified that the [petitioner] stayed with her at her apartment in Bridgeport from February 2 to February 7, when she returned him to his grandmother's home. She also testified that she shared the apartment with her niece and her niece's boyfriend; however, the grandmother, the niece and the niece's boyfriend were not presented as defense witnesses." Id., 524–25.

Following his unsuccessful appeal, the petitioner brought this petition for a writ of habeas corpus. In his third amended petition, the petitioner asserted fifteen claims of ineffective assistance of counsel. In a detailed memorandum of decision, the court denied the petition, finding that the petitioner had failed to prove that he was denied effective assistance of counsel under the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Certification to appeal was granted, and this appeal followed.

On appeal, the petitioner raises six claims of ineffectiveness of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) "that counsel's performance was deficient"; id., 687; namely, that "counsel's representation fell below an objective standard of reasonableness"; id., 688; and (2) "that the deficient performance prejudiced the defense"; id., 687; such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id., 687.

"When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 69 Conn. App. 551, 561, 796 A.2d 1212, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). With these principles in mind, we now turn to the petitioner's claims. Additional facts will be set forth as needed.

I

The petitioner's first two claims, namely, that trial counsel failed (1) to preserve sentence review rights, and (2) to inform him of a plea bargain offer and the risks of going to trial, are premised on issues of credibility; therefore, we will address both claims together. We reject these claims.

In its memorandum of decision, the court found, after listening to the testimony of both the petitioner and

trial counsel, that the petitioner's testimony was not credible. In ruling against the petitioner on his claim that trial counsel was deficient for failing to file for sentence review, the court noted that the petitioner recalled the sentence review papers, but neither asked for sentence review nor requested that trial counsel file for review. In addition, the habeas court concluded that the petitioner's claim that he never saw the sentence review paper was "not credible—particularly for someone who obviously was involved in every aspect of his case . . . . "

Turning to the petitioner's claim that he was never informed of a plea bargain or the risks of trial, the court determined, after reading the trial transcript and hearing and seeing the petitioner testify, that the petitioner was "just not credible." The court supported its conclusion with references to the petitioner's testimony during both his criminal and habeas trials, the petitioner's involvement in his criminal trial, the fact that the petitioner had been convicted under a plea for an earlier crime and the petitioner's failure to indicate that he wanted anything other than a trial when questioned by the trial court, *Damiani, J.*, in a proceeding prior to trial concerning a grievance that the petitioner had filed against trial counsel.

"This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction,* supra, 69 Conn. App. 561–62.

After reviewing the testimony presented at the habeas trial, we conclude that the court's findings regarding the

petitioner's claims that trial counsel improperly failed to preserve sentence review rights and to inform the petitioner of a plea offer or the risks of going to trial were not clearly erroneous. Accordingly, the petitioner's first two claims must fail.

## II

The petitioner next claims that trial counsel did not provide effective counsel because he failed to object to statements made by the prosecutor in closing argument, which the petitioner argues were inflammatory and improper. We reject the petitioner's claim under both prongs of the *Strickland* test.

During closing argument on January 12, 1998, the prosecutor stated: "He then grabs her purse, empties that out and goes through her personal belongings, and then takes, what I submit your common sense will tell you, is the rather unusual step of grabbing hold of a scarf and wiping down those areas that he has touched in an obvious attempt to eliminate fingerprints, certainly not the actions of someone who has decided to commit these offenses spur of the moment, *nor the actions, I would submit to you, of one who is a novice at committing those type of offenses.*" (Emphasis added.) The habeas court determined that the prosecutor's statements in closing arguments were proper because they accurately described what the petitioner did and that "[s]uch action certainly suggests one who has done this before or knows how he may be apprehended."

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed

for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Batista*, 101 Conn. App. 623, 634, 922 A.2d 1116, cert. denied, 284 Conn. 918, 933 A.2d 721 (2007). "Remarks that are nothing more than a permissible appeal to the jurors' common sense do not constitute prosecutorial [impropriety]." (Internal quotation marks omitted.) *State* v. *Ayuso*, 105 Conn. App. 305, 326, 937 A.2d 1211, cert. denied, 286 Conn. 911, 944 A.2d 983 (2008). In addition, "[i]t is well settled that in order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove both prongs of the *Strickland* test. A reviewing court [therefore] can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Lacks* v. *Commissioner*, 87 Conn. App. 225, 231, 866 A.2d 660, cert. denied, 273 Conn. 922, 871 A.2d 1027 (2005).

We agree with the habeas court that the prosecutor's statements explaining what the petitioner did after he committed the crime and the prosecutor's conclusions that these actions were "an obvious attempt to eliminate fingerprints" and not the actions of "someone who has decided to commit these offenses spur of the moment," were not improper because the prosecutor merely was restating the facts and drawing a reasonable inference that anyone who would take the precaution of wiping away his fingerprints after committing a crime is likely to be someone who planned the crime in advance. Because these statements were proper, we conclude that trial counsel was not deficient in not objecting to them.

The prosecutor's remark that the actions of the petitioner were certainly not those of "a novice"[1] presents

[1] Although the petitioner had a prior felony conviction, an oral motion in limine was granted by the trial court to keep out the precise name of the

a closer case for prosecutorial impropriety. We need not decide that question, however, because even if we assume, without deciding, that the remark was improper, the petitioner's claim as to that remark fails under the second prong of *Strickland*. To meet the second prong of the *Strickland* test, the petitioner must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland* v. *Washington*, supra, 466 U.S. 687. "[T]he petitioner's burden of proving that a fundamental unfairness [has] been done is not met by speculation but by demonstrable realities." *Ostolaza* v. *Warden*, 26 Conn. App. 758, 765, 603 A.2d 768, cert. denied. 222 Conn. 906, 608 A.2d 692 (1992). The petitioner has not demonstrated how trial counsel's objection to the prosecutor's limited comment would have changed the outcome of the criminal trial.

There was strong evidence evincing the petitioner's guilt. First, the victim was certain about her identification of the petitioner as the perpetrator; she testified that she selected the petitioner's photograph from the police photographic array with 99 percent certainty and immediately identified the petitioner when she saw him in person.[2] Second, the victim testified that the perpetrator wore a "very thin yellow band" on his finger. The victim's testimony was corroborated by two probation officers, both of whom stated in their testimony that, two days after the incident, they saw the petitioner and noticed that he was wearing a ring that matched the

crime for which the petitioner was convicted because it was the same crime as one with which the petitioner was charged in the underlying criminal case.

[2] Detective John Bashta along with Officer Peter Moller accompanied the victim in an unmarked police car, which was driven through New Haven to give the victim an opportunity to identify her assailant in person. The officers drove to the side of State Street in front of the Modern Apizza restaurant in New Haven just as the petitioner was leaving his probation intake interview, at which point the victim saw the petitioner and made a positive identification.

victim's description. In addition, a similar ring was seized from the petitioner's person when he was arrested, and that ring was offered into evidence at trial for the jury's consideration. Furthermore, the victim testified that the perpetrator had a narrow cut near the tip of his nose; both probation officers and one of the detectives involved in the case; see footnote 2 of this opinion; testified that they observed a similar mark near the tip of the petitioner's nose two days after the crime occurred, and a photograph of the petitioner evidencing this mark, taken three days after the incident, was entered into evidence at trial. Moreover, there was evidence of consciousness of guilt; three days after the incident, when the police were seeking to arrest the petitioner, they found him lying down and hiding in an upper floor staircase in his grandmother's apartment building. Because no prejudice to the petitioner has been shown from the limited statement by the prosecutor, the claim that trial counsel was ineffective for failing to object to the prosecutor's closing statements fails under the second prong of the *Strickland* test.

## III

The petitioner's remaining three claims all relate to the trial strategy employed by his trial counsel. He claims that his trial counsel failed to object to references to the petitioner's prior criminal history, to cross-examine the state's witnesses effectively and to prepare adequately for trial by not locating witnesses.

"Competent representation is not to be equated with perfection. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." (Citation omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798–99, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

A

The petitioner claims that trial counsel provided ineffective assistance in failing to object to references made to the petitioner's prior criminal history. We disagree.

The habeas court found that at "no time did anyone indicate what the petitioner's prior record was or why he was on probation." The court concluded that references to the petitioner's probation were necessary to explain the identification process; see footnote 2 of this opinion; which the petitioner asserted was improper, and to make the testimony of Heather Smith, the petitioner's girlfriend and alibi witness, more plausible. In addition, the court determined that if the petitioner had asked for a cautionary instruction regarding the photograph that the police had of him from a prior arrest, which was used in the photographic array presented to the victim to identify him, the issue would have been highlighted for the jury. Furthermore, the petitioner concedes that the failure to request such an instruction is "not necessarily impermissible." Moreover, the court noted that trial counsel did ask for and was given a limiting jury instruction regarding testimony referring to the petitioner's prior criminal history. Finally, we note that the petitioner had explained to the jury how he was identified by the victim as he was leaving the probation office. See footnote 2 of this opinion. Trial counsel cannot be found to have provided ineffective assistance for failing to object to the subject matter of the petitioner's testimony.

"[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency." (Internal quotation marks omitted.) *Levine* v.

*Manson,* 195 Conn. 636, 648, 490 A.2d 82 (1985). "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction,* 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002).

We agree with the habeas court that trial counsel's decision not to object to references made to the petitioner's prior criminal history "falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington,* supra, 466 U.S. 689. Therefore, this claim is without merit.

B

The petitioner asserts in his fifth claim that trial counsel's assistance was deficient due to counsel's failure to cross-examine the state's witnesses adequately during the criminal trial. We disagree.

The habeas court determined that trial counsel "effectively" cross-examined the state's key identification witness, the victim. The court also noted that had trial counsel continued cross-examination of the sympathetic victim, it "could not have helped the defense and more likely would have antagonized the jury." In addition, the court found that trial counsel "strenuously" cross-examined the detectives in an attempt to show that the identification of the petitioner was a "suggestive process" created to ensure that he would be identified as the perpetrator. Finally, the court concluded that trial counsel conducted a "thorough cross-examination" of the state's witnesses who were called to put the testimony of the petitioner's alibi witness in doubt in an effort to demonstrate that the recitation of one of the state's witnesses concerning the dates in question was incorrect.

"An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." *State* v. *Drakeford*, 63 Conn. App. 419, 427, 777 A.2d 202 (2001), aff'd, 261 Conn. 420, 802 A.2d 844 (2002). Upon reviewing the record of both the trial and habeas proceedings, we are in accord with the habeas court's conclusion that the trial attorney's examination of the state's witnesses was an exercise of sound trial strategy that we will not second-guess. The petitioner's claim therefore fails.

## C

The petitioner's final claim of ineffectiveness of counsel is that trial counsel failed to prepare adequately for trial by not locating witnesses who could have bolstered the petitioner's alibi defense, challenged the credibility of the state's witnesses or provided exculpatory testimony. Specifically, the petitioner claims that a witness who could have provided exculpatory testimony was a man who was in the store prior to the victim's being sexually assaulted and who signed the store's "visitor's book" as "Jeff."

The habeas court found that there was "no exculpatory witness who could have influenced the trial," given the testimony of the petitioner's hired investigator and the prosecutor at the criminal trial, both of whom had contacted "Jeff."[3] The court also agreed that on the basis of the statements[4] of an alibi witness taken by

---

[3] The prosecutor testified at the habeas trial that when he contacted the man named "Jeff" in preparation for the criminal trial, "Jeff" claimed that he did not have any recollection of having been in the store or any relevant knowledge relating to the incident. "Jeff" also indicated that even if he had been contacted back in 1996, he would not have been able to offer any evidence or testimony regarding the incident. When the petitioner's investigator contacted "Jeff" just before the habeas trial, "Jeff" was very irate at being contacted and refused to discuss the incident.

[4] The habeas court refers, in its memorandum of decision, to the statements of both potential alibi witnesses, Monique Cottrell and Ancy Dumont. Only the statements of Cottrell were taken, however.

trial counsel's investigator, additional testimony would not have been helpful to the defense and only would have invited cross-examination, thereby further weakening the defense.

Although "[c]onstitutionally adequate assistance of counsel includes competent pretrial investigation. . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it." (Citations omitted; internal quotation marks omitted.) *Ostolaza* v. *Warden,* supra, 26 Conn. App. 765. Moreover, "[o]ne cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." Id.

We agree with the habeas court that trial counsel provided adequate legal assistance. Trial counsel testified during the habeas proceedings that he attempted to locate "Jeff" through his private investigator and his own efforts but was unable to do so. Additionally, trial counsel testified during the habeas trial that he investigated the alibi witnesses whose names the petitioner had provided but chose not to call the additional alibi witnesses[5] at trial because Smith's testimony was so weak that calling any other witness would have served only to damage the petitioner's case. Furthermore, the evidence at the habeas trial regarding "Jeff's" knowledge; see footnote 3 of this opinion; indicates that "Jeff" would not have been a witness helpful to the petitioner. We conclude that trial counsel's decision not to pursue "Jeff" further as a potential witness and his decision not to call the remaining alibi witnesses were within the scope of reasonable trial strategy. Thus, the claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Because the petitioner's grandmother would have been sequestered as a witness, a decision was made, presumably by both the petitioner and his

trial counsel, that she would not be called so she could come and watch
the trial.

